Derbigny, J.
delivered the opinion of the Court.* From the value of the matter in dispUte aH(j the variety of questions raised for the consideration of the Court, this case has assumed. more importance than it would otherwise have derived from any difficulty attending its decision.
While the parties were partners in trade, the plaintiff bought a certain tract of land, first by an act under private signature in the name of the firm, and afterwards by a. public act purporting in "the body of it to be a purchase on hi.-, own private account, though signed by him in the name of the firm. A liquidation of the business of their concern being afterwards sued for, by the defendant before the Spanish Governor of Baton-Rouge, within whose district their commercial house was established, a .course of proceedings was there had, during which the land in question was adjudicated for the appraised value to the defendant, now the appellant.
The first question, therefore, to be disposed of is whether this adjudication ought to be considered as res judicata ; and first, before any enquiry into its validity, whether the judgment rendered in that case is final or still open.
*623 The history of that suit, which it must be Confessed exhibits a -strange scene, has nothing to do with .the investigation of this pointy and wifi be kept out of view until it is decided. Neither is it necessary for its decision to search into the Spanish judiciary system, in order to ascertain what was the judicial power of the Governor; of Baton-Rouge. Whether Governor Grandpre’s judicial authority was inherent to his office,'or delegated to him by the Governor-General of Louisiana/ who had by law a right to appoint delegates, is a matter of no consequence. It ought to be deemed sufficient that he exercised a jurisdiction. under the eyes and controul of his superiors. We are bound to presume, \Aere the contrary is not proved, that he acted with due authority..
On the 20th of August, 1803, Governor Grandpre rendered his judgment confirming a report of referees, which after having charged the appellant with the full value of the land now in dispute, established a balance in his favor. This judgment was notified to the appellee on the 27th of the same month, and on the 30th he presented to governor Grandpre a petition, in which he complains of the award, and begs leave to bring the whole case before the Superior Court sitting nt New-Orleans. Here then is an appeal in substance and in words, claimed within the legal delay: So that supposing this to have been a definitive *624 sentence, it is regularly appealed from. Bui, it was not a definitive sentence, from (governor Grandprc’s own shewing : for to this petition to appeal he answers, that the appellant “ having not “ yet seen the final - settlement of the accounts, “ cannot say whether he is injured, and that if up- “ on receiving communication of that final settle- “ ment he discovers any error in it, he will be at “ liberty to point them out, in order lor the 44 Court to determine as justice may require.”
This last decree amounting to a denial of* the appeal at that time, the appellee, unwilling to proceed any further in that Court, came directly before the superior of Governor Grandpre with a memorial stating his grievances, and a decree ordering some of the documents annexed to his petition to be translated, shews that his complaint was admitted. Since then nothing appears to have been doiie in the suit, so that if Governor Grand-pre’s decree was not final as he himself seemed to consider it, the case remained opened in his Court ; and if it was final, it remained open in the court of the Governor-General of Louisiana by virtue both of the petition of appeal, and of the application of the appellee there. In either case we must say that the decree of Governor Grandpre cannot' be considered as having the force of the thing judged, and is consequently no bar to the appel-lee’s claim.
*625 , This precludes the necessity of examining how far the Courts of this state may enquire into the validity of judgments in any othermanner than that which is established bf the laws. organising those Courts ; in other words, whether the Spanish system, according to which certain judgments not appealed from may be declared null and void, is yet in force in this co'urttry.
v Dismissing, therefore, that question, we now come to the merits of the case. Is the land here claimed the property of the appellee alone, or the joint property of him and his partner ?
By a private bill of sale dated September 29th 1799, the appellee bought the land in dispute for the account of the partnership in the absence of his partner. Under that title he took possession of the land and proceeded to improve it. But having received (it does not appear when) a letter from his partner, dated Cincinnatti, the l9th August of the same year, in which he told the appellee not to engage any land for him, the appellee, on the 25th ofMárch 1800, caused the vendor óf the land in question to make him a publi.c act of sale of it in his separate and individual name.. Upon this last act he claims title as the sole purchaser of the land.
In' support of this claim he alledges, that by the articles of the Co-partnership,1 entered into between him and the appellant John Smith, no right *626 was given him to purchase real property for the account of the firm; that the purchase by him first made without authority could not vest any right in his partner* until he should accept it ; and that the appellant having signified his intention by letter not to acquire any land in that part of the country, before the purchase had taken place, he must be considered as having refused to ratify the bargain. To the aid of this letter, several witnesses were called, who deposed that the appellant, on his arrival in the district of Feliciana in April 1800, expressed his disapprobation of the purchase of the land in contest e, some affirming he said he would have nothing to do with it, others that he spoke of the purchase as unnecessarily involving the partnership-in debt.
The first fact to be ascertained is whether by the articles of copartnership the appeilee was au-thorised to purchase for the firm any o her property than that which is usually received in payment of merchandize sold. A phrase in those articles has been tortured to make it signify that the appellee had such a right. It is this : “ the “ said merchandize shall be sold to the best advantage for cotton or other commutable ar- “ tides, or cash, as the acting partner may in his “ judgment deem advantageous.” The words commutable articles, it is said, must include every thing that may be the object of comm ree, and of •Course real property as well as any other. But *627 stretching that expression to the full extent given it by. the. appellant, it wouid at best signify no, tiling more than that the appellee could receive lands in payment of merchandize, which is very different from that of buying lands on credit, for cash. The authority of the appellee, as derived from the articles of copartnership, was limited to the sale of the merchandize for cash, or cotton, or other commutable articles ; but when thus converted, he had no right to dispose of the proceeds to buy real property with them. The doctrine contended for by the appellant, that in a commercial partnership purchases made by one of the partners, under the signature of the, firm, are binding on the others, may be very correct ; and yet it by no means follows that a partner has a right to bind the firm in every sort of acquisitions. In a commercial partnership all the mercantile trahs-actions of one of the partners are binding on the others ; but ⅛ would be monstrous to make them answerable for any act otft of the course of trade. A partner must be considered as vested by his copartners with certain powers, for certain, purposes. If he travels out of those powers, his acts cannot be more binding on the others,, than the acts of an attorney who exceeds his powers, are obligatory on his constituents.,
By the articles of copartnership, then, the appellee had no right to buy real property for the firm. Yet he did so ; What is to be the conse *628 quence ? It is not disputed that when a man undertakes to buy a thing for another without authorisation, the person for whom the purchase is made may avail himself of it ; but it is said that such person does not thereby acquire any right before he accepts the purchase ; and that in the mean time it is in the power of him, who has bought in the name of the other, to cause the coil-tract to be cancelled. Of this particular question we have not found any express solution ; but it does appear to u$. that the principles which regulate the conduct of the negotiorum gestor generally shew that he can have no such power. One of those principles is, that the person who has once undertaken the management of the business of another, is no longer at liberty to abandon it : a fortiori must it be said that, when he has done an act for the benefit of that other person, he shall not be at liberty to destroy it—(1 Domat, book 2, tit. 4, sect. 1, art. 1.) Again, when the ne-gotiorum gestor fes without necessity bought something for another, the risk is his and the profit is anothers. f same sect. art. 4.J The other then acquires a right : he from thence becomes entitled, to the advantages resulting from fhe purchase, and the negotiorum gestor, who is not at liberty tp abandon his interest, surely cannot by a contrary act deprive him of that benefit. But it is asserted that in this case the appellant, John Smith, refused to ratify the purchase. To prove *629 that, a letter is produced in which the appellant recommends to the appellee not to engage any land for him. That letter, however, which is dated about six weeks anterior to the purchase, cannot be considered as containing a refusal to ratify a bargain, which did not exist. After this recommendation he was still at liberty to accept or to refuse a purchase made in his name. The contract which the appellee had undertaken to make for the benefit of the appellant could not be destroyed by himself before the,pleasure of the appellant was known touching that identical acquisition. So that supposing the letter here produced to contain the prohibition which the appellee contends for, still he ought to have waited for the answer of the appellant on that particular subject. But this letter is not what the appellee endeavours to make if. A recommendation not to engage any land for John Smith is not a prohibition to “ buy lands for the partnership.' Taking the whole content of this letter, together with sbme. passages in the letters of the appellee, there is every reason, to believe that John Smith had previously manifested an intention to Settle in the Bayou Sarah District, and had given his partner some.instructions to that effect, which instructions he after-wards revoked in these words : “ Don’t absolute“ly engage any land for me in that country, as I “ wish to reconnoitre, a little more generally through' “ the country than I have.” ,
*630 This letter, then, is by no means a sufficient voucher of John Smith’s refusal to abide by the purchase of the land in dispute in the name of the partnership. As to, the conversations which he had with other persons touching that acquisition, it cannot be seriously contended that they amount to a renunciation of his rights. Besides they have nothing To do with the motives which induced the appellee to. cause a second sale to be made in his private name, for that was already done when those conversations took place.
Admitting, therefore, the purchase made by the appellee in the name of the partnership to be nothing more, with respect to the share of John Smith, than a purchase made by a person having no authority to buy, his right to accept it stood unimpaired, when the appellee undertook to destroy that sale.
But the appellee, although by the articles no, power was given to him to acquire for the partnership other property than that which he. was to, receive in the course of his trade, cannot be deemed to have been entirely destitute of any authority to act as he has done. Independent of any written stipulations, a partner, like a proxy, may be considered as tacitly vested with a discretionary power to do ail things necessary to enable him the better to carry on the business which he has to manage. If the partner is in the situation of 3 proly with respect to his right to bind his partnee, *631 the fqllowing principle may be applied to him. “ The attorney is himself bound by the contract “ which he enters into as such, when the contract “ is not made by order of his constituent, nor for his utility -, but if it is made by order of the con- “ stituent, or for his utility though without order, “ it binds him, and not the attorney.” f Curia Philip, tit. Factores, Ab. 32.)
In this case it is evident from the conduct and correspondence of the appellee that there existed between the parties some understanding as to the exercise of such discretionary power. The principal produce for which they could sell their goods was cotton ; it was more profitable to buy it in the seed, hence the propriety of establishing a gin: hence the necessity of buying a place whereon to build it. The appellee bought on very moderate terms a tract of land advantageously situated, where a store could be kept and a gin be erected. He bought mules to, work at the gin ; he bought a slave for the service of the store, and actually improved the place with thd funds' of the partnership. Had he no power or authority to do all this ? If that power and authority can be denied^ surely it is not by him, whose conduct evidently shows that he considered hinasélf as sufficiently authorised for those purposes.
.Upon the whole we are of opinion, that under the private sale of the land in dispute in favor of *632 partnership, J. Smith acquired a right tb .an. undivided-moiety of the- land ; that, he has done . no act by which he can be considered as having divested himself of that right ; that the subsequent public act of sale of the same land could not destroy , and has not destroyed, that right; and that, as between the parties, it is a mere nullity, unless it is received as a confirmation of the private act.
Ir is, therefore, adjudged and decreed that the judgment of the District Court be reversed, and that judgment be entered for the appellee for one7 undivided moiety of the land by him claimed..
Duncan and -Livingston offered the following argument for a rehearing.
To shew that the plaintiff could legally cancel the'contract of sale under private signature from Duplantier to R. Kemper & Co. and receive in return a Sale of the land to himself individually, he begs leave to make the following points :
I.' No man can contract for another, unless he be authorised so to do. Kemper and Smith were partners, but this contract of sale was. out of the partnership concern, therefore there could be no authority thence for the 'contract, apd no other authority is pretended ; therefore^ the ' act itself, so *633 far as related to Smith, was nugatory and void, and no right could accrue to any person whatever from it.
II. Aman in contracting for another without obligation so to do, or any authority whatever from the other, cannot affect the interests of the other; nor can he bind himself thereby to the' other, for it is a mere voluntary act, and ex ñudo pacto nonpritur actio ; see Powell on Contracts, 338 to 343 : Pothier on Contracts, 5, which if it were binding, might be revoked as long as it remained unaccepted. '
JII. That the defendant, Smith, could only avail himself of his purchase while the contract remain-, ed in existence: for he might make that his contract which was not his previously, but Kemper’s; the plaintiff not having been obligated to purchase for Smith, incurring no obligation either to keep the contract opened for Smith’s acceptance; having annulled it, Smith cannot then avail himself of it. His right is not destroyed, for he had none. Suppose a right, where was the refttedy ? Nota-gainst the vendor, for Smith was not bound, and there existed no contract between him and the vendor ; not against the plaintiff, for he neither was bound in law nor conscience to buy for Smith, or to hold for him.
*634 XV. The plaintiff was therefore at Full liberty to countermand what he had done without authority; while it was merely his act and before it was made the act of Smith ; for the purchase being merely his voluntary act, he had the same controul in dissolving that he ha"d in originating it. The act' did not diyest any, there was no, interest vested in Sijiiih, for his contract was wanting, there being no assent. T. Powell'on Contracts, 8, actus inceptus cnjus perfectio pendit ex volúntate partium re-vacarí potest; see 1. Font), in Equity, 158, anda voluntary act, even if it was a gift (a stronger case than the present) is countermandable before acceptance or assent; 1 Strange 166.
V. But in this case, the dissent of Smith was fully expressed. Smith’s letter to the plaintiff, dated 25th August, 1799, although the writer does not apply it to any particular purchase, is clearly applicable to all purchases. .There is no peculiarity in the purchase of the land in question that could distinguish it. A caution beforehand not to buy, is a dissent to all purchases ; and his reasons for dissenting existed for all, and applied equally for any; he wished to realize all the partnership’s funds to make remittances to Philadelphia, to put the concern in such situation as to be closed, if he thought proper. Immediately on his arrival, he gives preparatory notice to dissolve, he expressly tells the plaintiff to make no further purchases from. *635 Philadelphia of goods, he says the same of lands, and notwithstanding the idea entertained that thisr refers to separate lands it appears from a ' view of the whole subject to embrace all purchases.
1. From the design and spirit, of the letter, which would controul any restricted meaning of words loosely used.
2. From Smith’s own construction of this letter, as appears from the testimony of Col. Baker, of James Williams, and of J. H. Johnston,
3. From.the plaintiff’s construction of this letter at the time he received it, as appears by the testimony of James Williams, J. H. Johnston, Lilly and Duplantier.
4. From Duplantier’s construction of this letter. It is, therefore, fair to understand this letter as all the parties did at or about the date of the transaction-growing-out of it. If it were doubtful whether the impressions- this letter made on the plaintiff conveyed Smith’s intentions respecting this purchase, Smith’s frequent declaration of his dissent, in the presence of many witnesses,-would remove that doubt and shew his mind fully on the subject. It will, therefore, follow from the testimony that the plaintiff in annulling, the first purchase did so with the fair and honest motive of satisfying Smith; If he did'consider himself authorised, previous to Smith’s letter, his opinion was so far changed afterwards as to induce him to undo; what he had done, to re *636 move all causes of complaint, by taking the purr-chase on himself.
VI. But the plaintiff is viewed in the light of an agent ; how he could be an agent for Smith, in the purchase of land for the partnership, is not conceived ; he was then, if at all, an agent for thé partnership, but the partnership did not extend to land purchases ; his agency in the partnership is defined in the articles. As a partner he is a principal and no ageñt. Watson on P. 2. He is not constituted the agent of Smith, nor of Kemper &, Co. ; if he were the agent he would bind his principal, for if in the purchase he contracted as agent, it was not in his own name, but for Kemper & Co.; see Pothier on Contracts 334, “ it is not he, the agent, that contracts, but his principal,” and yet in this case his principal, (if any) was not bound, and therefore could not have contracted. Besides, if he were an agent to make the purchase, he was also an agent to annul it ; for an agree-' meat may be waved, with the concurrence of the parties, Powell Contracts, 412 (and we may add) or their agents. A case is cited shewing that “ no “ person, who. undertakes the management of the “ business of another,, can abandon it.” Does this mean any thing more than that he who engages as an agent shall not neglect the business of the principal? or that a person who even voluti-tarily undertakes shall not occasion injury to the *637 . person whose business he manages ? as in on Contracts, 364 to. 369, when injury, occasioned by neglect on an officious undertaking, . makes the undertaker hable, and see the case*of Coggs vs. Bernard, mentioned in PoweU. Altho’ I am prohibited from doing an injury, I am not compelled to do a service or benefit. This is the only case that can be brought to make the plaintiff an agent, yet it canndt apply, for 1st. he occasioned no inj ury : 2d. he did not undertake to manage Smith’s business, nor the business of the partnership in any other manner than as a partner.
The other case cited from Domat, is where “ an agent has bought for another.” This applies to a constituted agent. If his transactions are gainful, the benefit must result to his, constituent ; if he act with a certain degree of imprudence,, he must suffer for it. This cannot apply to a person who is under no obligation to act for another.
VII. But although, as a .partner, the plaintiff had no right to bind the firm, and of course none to affix its signature : although he be not the agent of Smith, nor of Kemper St Co. «till it is contended that the plaintiff, as a partner might extend his powers as such by adding to them those of a proxy or attorney. If he had discretionary powers, they bound the partnership ; that *638 they do not is the opinion of the Court. If his powers only extend, to», binding, himseli they are not those of an attorney. If the other partner is bound by every act of his copartner which is “ for his utility” then indeed: one partner is agent for the other? not only in the partnership concern but universally, and provided the act is at the time■ advantageous, whatever subsequent events may occur to effect a change ; the other is bound no-lens volens : with such an absurdity growing out of this principle it cannot surely be applied to a partner.
VIII. Th e lawrelating to the negotiorum gestor, is regulated by positive statute, 5th part. 12, 26 : it relates only to cases where there is some business in which the principal has an existing interest, and to the same effect is Pothier, 168 there must be an affair in which the principal is interested : the negotiorum gestor cannot create one for his principal without his knowledge, for this conclusive reason that by 5, Partid, tit. 12, law 20 ;, the negotiorum gestor has an action against his principal for his disbursements and expences, if bona Jide incurred. Now, it would be monstrous to make a man pay the price of the land, or the expense of conveying it, wherever an officious friend might think it for his interest to make a purchase for him. '
*639 IX. Supposing ^Cemper to have aright to purchase for Smith, subject to his ratification, as the parties agreed that the sale should be completed before a notary, until this was done, he had a right to rescind the agreement, 5 p. 5, 6.
X. If Kemper’s purchase continued to the benefit of Smith, it could only be from the time of his ratification, because there was neither express nor implied authority, and in the intermediate time he had the same right to rescind that he had to purchase.
XI. If a decree should be given in favor of Smith, for the one half, as the legal title is in Kem-per, he ought not to be divested, but on a full and final settlement, and payment by Smith of all what he owes to Kemper on their partnership account!
The Court allowed are-hearing: but required counsel to confine their arguments to the following questions.
1. Whether a person, after having created an interest for another, can destroy that interest, before the other has signified his refusal ta accept it ?
2. How far a partner may bind his .firm in contracts which, though not contemplated by the articles of copartnership, are entered into for the utility of the firm and for the better management of its business ? Postea, vol. 4.

 Martin, J. did not join in this opinion, having been of counsel in the cause.